UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Manuel Vega,<br><br>   Plaintiff,<br><br>vs.<br><br>Carondelet Health Network, and<br>Ascension Health, and<br>Sedgwick Claims Management Services, Inc.<br><br>   Defendants. | CV 12-00617-TUC-DCB (JR)<br><br>**REPORT AND RECOMMENDATION** |

In this action, Robert Manuel Vega ("Plaintiff") seeks to: (1) recover all benefits due under the terms of the Long-Term Disability Plan ("LTD Plan") and to enforce his rights under the terms of the LTD Plan; (2) reinstate any other employee benefits, which were terminated, discontinued, or suspended as a result of the termination of his disability benefits; (3) recover his attorney's fees and costs incurred herein from Carondelet Health Network ("Carondelet"), Ascension Health ("Ascension"), and Sedgwick Claims Management Services, Inc. ("Sedgwick"),

1

(collectively, "Defendants); and (4) receive prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid. Plaintiff seeks such remedies and requests judgment against Defendants as a result of the allegedly erroneous termination of Plaintiff's long-term disability benefits as of February 28, 2011.

Plaintiff, a Tucson, Arizona resident, filed his Complaint on August 16, 2012. (Doc. 1). Defendants filed a Motion to Dismiss for Improper Venue or, in the alternative, Transfer Venue and Dismiss Defendant Carondelet Health Network on November 27, 2012. (Doc. 18). In response, Plaintiff Robert Manuel Vega filed Opposition to Defendants' Motion to Dismiss for Improper Venue and Dismiss Defendant Carondelet Health Network on December 4, 2012. (Doc. 20). Defendants filed a Reply in Support of Defendants' Motion to Dismiss for Improper Venue and Dismiss Defendant Carondelet Health Network on December 12, 2012. (Doc. 21). A hearing was conducted in this Court on January 31, 2012. The Court now issues its recommendation that the Defendants' Motion to Dismiss be granted in part and denied in part and that this matter be transferred to the Eastern District of Missouri.

**I.   Factual Background**

On June 1, 2008, Carondelet adopted the LTD Plan, a purported benefit plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1011, et seq., for the benefit of its eligible employees. (Doc. 1). Ascension, a non-profit corporation formed under the laws of the State of Missouri, and Sedgwick are joint

plan administrators under the LTD Plan. (Doc. 1). Carondelet provided certain employees with long-term disability insurance pursuant to the LTD Plan. (Doc. 1).

Plaintiff was a Carondelet employee, became a covered individual under the Plan, and remained continuously employed as a Stationary Engineer. (Doc. 1). However, on December 11, 2009, Plaintiff became disabled and was unable to perform the duties of his occupation. (Doc. 1). Plaintiff suffers from severe degenerative joint disease of the knee, and alleges the condition prevents him from performing the material duties of his occupation or any other work or service for which he is reasonably qualified. (Doc. 1). Plaintiff's treating physicians have placed restrictions and limitations upon his capacity to work. (Doc. 1). As a result, Sedgwick approved Plaintiff's application for benefits on May 20, 2010. (Doc. 1).

On February 28, 2011, Sedgwick terminated Plaintiff's long-term disability benefits. (Doc. 1). In response, Plaintiff initiated this action for relief under ERISA. (Doc. 1). Plaintiff alleges that Sedgwick's denial of long-term disability benefits was erroneous, contrary to, and in breach of the terms of coverage and was based on erroneous information and false assumptions. (Doc. 1). Plaintiff also alleges that Sedgwick's determination that he was not entitled to benefits was influenced by an improper conflict of interest. (Doc. 1).

**II.     Discussion**

     **A.     Motion to Dismiss or Transfer Based on Improper Venue**

          **1.     Forum Selection Clause**

3

In Defendants' Motion to Dismiss, Defendants claim that venue is improper in this Court because the forum selection clause contained in the LTD Plan identifies the United States District Court for the Eastern District of Missouri as the exclusive venue for any claim "relating to or arising under" the LTD Plan. (Doc. 18). Thus, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), Defendants request that the case be dismissed or transferred to the Eastern District of Missouri. (Doc. 18).

A forum selection clause is presumptively valid and "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 325 (9th Cir. 1996) ("Although *Bremen* is an admiralty case, its standard has been widely applied to forum selection clauses in general."). To avoid the application of a forum selection clause, the party opposing its enforcement must show that it is unreasonable under the circumstances. *M/S Bremen*, 407 U.S. at 10; *see also Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514-15 (9th Cir. 1988). The enforcement of a forum selection clause is unreasonable where: (1) the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) the party objecting to the clause would effectively be deprived of his day in court if the clause is enforced; and (3) the enforcement of the clause would "contravene a strong public policy of the forum in which suit is brought." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (citations omitted). Forum selection clauses are also evaluated for fundamental fairness. To determine whether a forum selection clause is fundamentally fair, and thus enforceable, courts consider the absence of a bad-faith

4

motive, the absence of fraud or overreaching, and notice of the forum provision. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595; *Dempsey v. Norwegian Cruise Line*, 972 F.2d 998, 999 (9th Cir.1992)).

Here, the Plaintiff has presented no evidence to suggest bad-faith, fraud or overreaching. Moreover, the forum selection clause was explicitly clear in the LTD Plan. Specifically, it reads as follows:

> **10.20 Forum Selection Clause**. Except as the laws of the United States may otherwise require, any action by any Plan Participant or Beneficiary relating to or arising under the Plan shall be brought and resolved only in the U.S. District Court for the Eastern District of Missouri and in any courts in which appeals from such court are heard, and such court shall have personal jurisdiction over any Participant or Beneficiary named in such action.

According to Defendants, Ascension is a member of many non-profit health systems, hospitals, and other health care facilities in twenty states and the District of Columbia. (Doc. 19). Therefore, without a forum selection clause, Defendants could be subject to litigation in countless jurisdictions nationwide, since it is presumable that the LTD Plan's participants and beneficiaries are citizens of at least twenty-one locations. The forum selection clause eliminates any uncertainty about where jurisdiction lies, thus avoiding confusion regarding venue selection. Moreover, since it is arguably more cost efficient for Defendants to litigate in Missouri, those savings could be passed along to the LTD Plan itself. *See Cent. States, Southeast and Southwest Areas Pension Fund v. O'Brien & Nye Cartage Co.*, No. 06-4988, 2007 WL 625430, at *3 (N.D. Ill. Feb. 22, 2007) (finding that "[t]he purpose of including the venue selection clauses is obviously to allow for the Trustees to better exercise

5

1  efficient administration of the Funds by reducing cost associated with litigating
2  claims against multiple employers . . . .").

3  Counsel for Ascension and Sedgwick are located in and do business in
4  Missouri. (Doc. 21). While local counsel for Defendants reside in Pima County, the
5  defense firm representing Defendants is Missouri based. (Doc. 21). Plaintiffs
6  argument that transferring venue would be "enormously expensive" has some merit,
7  but falls short as it is more likely than not that neither Plaintiff nor his attorney would
8  be required to travel to Missouri; ERISA cases are normally decided by cross-
9  motions and without the need for trial or discovery. *See, e.g., Russell v. Comcast*
10 *Corp.*, 381 Fed.Appx. 657 (9th Cir. 2010). It is also critical to note that even if
11 Plaintiff could obtain discovery in this case, any information that Plaintiff could
12 theoretically discover would likewise be located in St. Louis, Missouri, making travel
13 inevitable. (Doc. 19).

14 Additionally, Plaintiff has failed to prove that venue is improper in the United
15 States District Court for the Eastern District of Missouri. In fact, Plaintiff has gone as
16 far as acknowledging that "the majority of courts in this Circuit reviewing the case
17 under strict contractual interpretation will find merit in Defendant's motion." (Doc.
18 20). Instead, Plaintiff argues that the "uniqueness" of ERISA and the present case
19 require further analysis by this Court. (Doc. 20). However, Plaintiff has failed to
20 demonstrate any significant "uniqueness" to this case that would warrant
21 disregarding the forum selection clause. Additionally, the record fails to establish that
22 the enforcement of the forum selection clause would "contravene a strong public

6

policy of the forum in which suit is brought." *Bremen*, 407 U.S. at 15. This Court finds no rational reason as to why public policy would prevent such a transfer.

As the Plaintiff has failed to overcome the strong presumption in favor of enforcing forum selection clauses, the Court recommends that the District Court enforce the clause.

### 2. Dismiss or Transfer

Having concluded that venue in this Court is improper based on the forum selection clause contained in the LTD Plan, the Court has the discretion to: (1) dismiss the action; or (2) transfer venue to the Eastern District of Missouri, if it is in the best interests of justice to do so. *See* 28 U.S.C. § 1406(a). The Defendants have urged dismissal, but both in their papers and at the hearing raised no strong objection to transfer. The fact that Plaintiff will likely incur additional fees and refile this action in Missouri should the Court opt to dismiss has been found a sufficient consideration to justify transfer over dismissal. *See, e.g., Citizens for a Better Env't-California v. Union Oil Co. of California*, 861 F.Supp. 889, 898 (N.D.Cal. 1994) *aff'd* 83 F.3d 1111 (9th Cir. 1996); *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F.Supp.2d 855 (N.D.Cal. 2010).

### B. Motion to Dismiss Carondelet Health Network

Defendants request that Carondelet be dismissed from the action pursuant to Fed. R. Civ. P. 12(b)(6), as Carondelet is not a proper defendant under Section 502(a)(1)(B) of ERISA. (Doc. 18). Defendants claim that because Carondelet is not the Plan Sponsor, Plan Administrator or Claims Administrator of the LTD Plan and

7

1 the complaint fails to allege that Carondelet played any role in determining whether 2 Plaintiff was eligible for additional long term disability benefits, Carondelet should 3 be dismissed. (Doc. 18).

4 In response, relying on *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 5 (9th Cir. 2011), Plaintiff argues that Carondelet is a proper party because "potential 6 liability under 29 U.S.C. § 1132(a)(1)(B) is not limited to a benefits plan or the plan 7 administrator." *Id.* at 1207. While correct to a limited extent, Plaintiff neglects to 8 acknowledge that "appropriate circumstances" must be presented to assert that a 9 party is proper. *Id.* at 1204.

10 When asked at the hearing to identify the circumstances that support 11 Carondelet's inclusion as a defendant in this case, Plaintiff's counsel suggested that 12 should the Plaintiff find it necessary to return to work, Carondelet may well refuse to 13 allow him to do so.  As these events have not come to pass, and appear unlikely to be 14 associated with ERISA or the LTD Plan in question, such a claim is entirely 15 speculative and does not constitute the "appropriate circumstances" needed to 16 support a claim against Carondelet in this action.  Furthermore, it is unrefuted that 17 Carondelet has no discretionary authority to interpret and apply the LTD Plan and 18 has no authority to decide claims or pay LTD Plan benefits.  As such, the Court 19 recommends that the District Court grant Defendants' Motion to Dismiss Carondelet.

20 **C.      Appropriateness of Dismissal and Transfer**

21 At the hearing, the Court raised its concerns about dismissing Carondelet prior 22 to transferring the case to another district, thinking it might be best to allow the

1 transferee court to rule on the Motion to Dismiss. However, the Court is satisfied
2 that dismissal is the appropriate course of action. *See, e.g., Garvey v. Piper Rudnick*
3 *LLP Long Term Disability Insurance Plan*, 2008 WL 410088 (D. Oregon Feb 12,
4 2008).

5       In *Garvey*, the plaintiff was a partner of a law firm and entitled to long-term
6 disability benefits under a plan administered by his law firm and insured by Standard.
7 *Id.* at 1. After the plaintiff applied for and received short-term disability benefits, he
8 quit working and applied for long-term disability benefits, but was denied. *Id*. The
9 plaintiff then filed an action seeking, among other things, a determination that he was
10 entitled to benefits under his plan. *Id*. In response, the defendants sought to transfer
11 venue from the District of Oregon to the Northern District of Illinois and also sought
12 the dismissal of defendant Standard based on the plaintiff's failure to state a claim
13 under Fed. R. Civ. P. 12(b)(6). *Id.* In ruling on the motions, the court found that
14 Standard was not a proper party, because there was a "clear designation" that another
15 entity was the plan administrator and, thus, the only proper party. *Id.* at 5. The court
16 also concluded that venue was improper in Oregon and transferred the case to the
17 proper forum, the Northern District of Illinois. *Id.* at 9.

18       Like the Standard defendant in *Garvey*, it is clear that Carondelet is an
19 improper defendant in this case. It is equally clear that this case should be transferred
20 based on the forum selection clause. Accordingly, the Court's concerns about the
21 propriety of doing both are allayed and recommends that the District Court enter an
22 order dismissing Carondelet and transferring the action to Missouri.

9

## IX. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **recommends** that the District Court, after its independent review, **grant in part** and **deny in part** Defendants' Motion (Doc. 18) as follows: deny Defendant's Motion to Dismiss for Improper Venue; grant Defendants' Motion to Dismiss Carondelet; and grant Defendants' Motion to Transfer Venue to the Eastern District of Missouri.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **12-CV-00617-TUC-DCB**.

Dated this 5th day of February, 2013.

Jacqueline M. Rateau
United States Magistrate Judge